UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------X
JOSEPH A. CONZO, et al.,

                Plaintiffs,        <u>OPINION</u>

      -against-                 05 Civ. 705 (MGC)


CITY OF NEW YORK and THE FIRE DEPARTMENT OF
THE CITY OF NEW YORK,

                Defendants.

--------------------------------X

APPEARANCES:

         WOODLEY & MCGILLIVARY LLP
         Attorneys for Plaintiffs
         1125 15th Street N.W., Suite 400
         Washington, DC 20005

         By:  Eric C. Hallstrom, Esq.
              Gregory Keith McGillivary, Esq.
              David William Ricksecker, Esq.
              Sara Lyn Faulman, Esq.
              Ellen L. Eardley, Esq.


         QUINN MELLEA & GIOFFRE, LLP
         Attorneys for Plaintiffs
         399 Knollwood Road, Suite 220
         White Plains, NY 10603

         By:  Andrew C. Quinn, Esq.


         OUTTEN & GOLDEN, LLP
         Attorneys for Plaintiffs
         3 Park Avenue, 29th Floor
         New York, NY 10016

         By:  Lauren Elyse Schwartzreich, Esq.

JACKSON LEWIS LLP
Attorneys for Defendants
59 Maiden Lane
New York, NY 10038
And
58 South Service Road
Melville, NY 11747

By:  Felice B. Ekelman, Esq.
     Samantha Abeysekera, Esq.
     Paul J. Seigel, Esq.

NEW YORK CITY LAW DEPARTMENT
Attorneys for Defendants
100 Church Street
New York, NY 10007

By:  Blanche Jayne Greenfield, Esq.

**Cedarbaum, J.**

This is a collective action under the Fair Labor Standards Act ("FLSA") on behalf of 1478 current and former paramedics and emergency medical technicians ("EMTs") employed in the New York City Fire Department ("FDNY"). Plaintiffs move for summary judgment that defendants are liable for three separate violations of the overtime requirements of the FLSA, 29 U.S.C. § 207(a). First, they move for summary judgment on their claim that they are owed compensation for "gap time," or hours worked between regularly scheduled hours and overtime hours. Second, they move for summary judgment on their claim that they are owed back pay for fifteen to thirty minutes of uncompensated overtime performed prior to the official start of their shifts. Finally, plaintiffs claim that their overtime payments violate the prompt payment requirement of the FLSA because they regularly receive overtime pay more than two pay periods (26 days) after the overtime is worked.

Defendants also move for summary judgment on each of these three claims, on the ground that they have not violated the FLSA. In addition, defendants move for summary judgment on the ground that any damages that could be assessed against them for violations of the FLSA are offset by overpayments they have already made to plaintiffs, which may be credited toward overtime compensation under 29 U.S.C. § 207(h)(2).

For the reasons set forth below, plaintiffs' motion for summary judgment is denied. Defendants' motion for summary judgment is granted in part and denied in part.

**BACKGROUND**

## I. Undisputed Facts

### A. Gap Time

The applicable collective bargaining agreement ("CBA") specifies that plaintiffs' regular rate of pay is computed by dividing annual salary by 1957.5 hours. The CBA further specifies that plaintiffs' regularly scheduled workweek will be 37.5 hours, or five 7.5 hour shifts per week. Plaintiffs' overtime rate of compensation, mandated by the FLSA to be 1.5 times the regular rate of pay, is calculated by taking weekly salary plus shift differentials, dividing the total by 37.5 hours, and then multiplying by 1.5.

Despite the fact that the applicable CBA refers to 7.5 hour shifts, plaintiffs' actual shifts are eight hours long. Moreover, plaintiffs work a 5/2, 5/3 schedule. This means that one week they work five shifts of 8 hours and the next week they work four shifts of 8 hours. When an EMT or paramedic works an extra shift, this counts as 8 additional hours of work.

While some employees receive a half hour meal break during each shift, so that they are only on duty for 7.5 hours, it is undisputed that those plaintiffs working in the field do not

receive such a break.  Effective July 2006, the 2006 CBA
instituted the payment of "meal money" which is paid to those
workers who do not receive one half hour, duty-free meal break
per shift.  The 2006 CBA made the payment of meal money
retroactive to 2002.  Meal money is equivalent to one hour per
week at the regular rate of pay.

**B. Pre and Post Shift Work**

Plaintiffs allege that EMTs and paramedics are required to
check in with a lieutenant, change into uniform and gather and
inspect personal equipment before their shifts begin.  In
addition, plaintiffs claim that they must change out of uniform
before going home.

For the purpose of expediency, the parties agreed to
designate every tenth plaintiff a "test plaintiff" and limited
initial discovery to production of records related to test
plaintiffs.  Twenty of the approximately 140 test plaintiffs (of
the 1478 total plaintiffs) were deposed in this case.  Each
deponent was asked whether work is regularly performed before the
start of each shift.  The deposition testimony documents the
amount of time it takes each test plaintiff to perform each
alleged pre-shift task and how often each task is performed.
Plaintiffs' testimony regarding each task varies.  Some
plaintiffs testified that an individual task takes only a minute
or two to complete while others report that the same individual

task takes them 15 minutes.  Some plaintiffs testified that they perform each task daily and other plaintiffs testified that they perform some tasks only once a month or never at all.

**C. Late Payment of Overtime Wages**

Plaintiffs receive biweekly paychecks.  Generally, overtime worked in Week 1 is paid in the paycheck for Week 1 and Week 2. Overtime worked in Week 2 is paid in the following paycheck, the paycheck for Week 3 and Week 4, along with overtime worked in Week 3.

EMTs and paramedics fill out weekly sign-in sheets which include regularly scheduled start and end times, additional hours worked and any shift differentials.  These time sheets are transcribed onto Time and Payroll Report ("TPR") forms by a supervisor, checked by a Captain, reviewed and scanned by the payroll department and sent on to the city-wide payroll network, which processes them and sends out paychecks.

Between January 1, 2002 and August 19, 2006, approximately $50,000 worth of overtime was paid to the test plaintiffs more than two pay periods after the date on which it was worked. Looking at the same data from a different angle, of the 44,998 cash overtime payments paid to test plaintiffs during this time, 431, or approximately 1 percent, were late.

In order to update its accounting procedures, the FDNY is in the midst of implementing "CityTime," an electronic payroll

system, which is expected to automate the FDNY's payroll. CityTime was first introduced in a limited number of FDNY locations on July 15, 2007 and is in the process of being implemented at all stations.

### D. Cumulative Offsets

Plaintiffs work a 5/2, 5/3 schedule.  This means that every other week, they are regularly scheduled to work four 8 hour shifts.  In those weeks, the FDNY pays plaintiffs time and a half for any additional time that they work beyond their regularly scheduled 32 hours.[1] In addition, if a plaintiff works "late call" beyond a regularly scheduled 8 hour shift, defendants pay time and a half for those late call hours regardless of whether the 40 hour threshold is met that week.[2]

### DISCUSSION

---

[1] Defendants state that Plaintiffs "almost always" receive this premium pay while Plaintiffs state that they "sometimes do not" receive it.
[2] Id.

## I. Summary Judgment Standard

Summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  A genuine issue of material fact exists when the evidence is "such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In deciding whether a genuine issue of fact exists, the court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003)(citing Anderson, 477 U.S. at 255).  Summary judgment is appropriate when "the nonmoving party fail[s] to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "[A] plaintiff must provide more than conclusory allegations to resist a motion for summary judgment." Holcomb v. Iona College, 521 F.3d 130, 137 (2d Cir. 2008)(citing Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985)).

## II.  The FLSA

The central provisions of the FLSA are its minimum wage and maximum hour provisions. 29 U.S.C. §§ 206-07.  Section 206

mandates that an employer pay each employee a minimum hourly wage.  29 U.S.C. §§ 203, 206.  Section 207 requires that an employer pay overtime at a rate of one and a half times an employee's regular rate for all hours worked in excess of 40 per week.  29 U.S.C. § 207(a)(1).  An employee's regular rate of pay is the employee's average hourly wage for non-overtime hours, including all shift differentials, but excludes premium pay for holidays, overtime hours, gifts, stock, bonuses and certain other premiums.  29 U.S.C. § 207(e).

## III. Plaintiffs' Claim for Allegedly Uncompensated "Gap Time"

Plaintiffs move for summary judgment that those employees who do not receive a half hour, duty free meal break are owed compensation for an additional 2.5 hours of back pay at the regular rate for each week in which they worked over forty hours. Plaintiffs allege that their annual salary is intended to compensate them for 37.5 hours per week and that their overtime pay compensates them for hours above 40 per week.  Therefore, they claim that they are owed 2.5 hours of pay at the regular rate for those hours worked between 37.5 and 40.  This is a typical "gap time" claim, so-called because plaintiffs seek compensation for hours worked "in the gap" between non-overtime hours compensated for by their salary and hours above 40 which are compensated for with overtime pay.

Plaintiffs claim that they are owed unpaid gap time only in workweeks in which they worked in excess of 40 hours.  In the weeks in which plaintiffs worked fewer than 40 hours, it is undisputed that plaintiffs' average hourly wage was above the statutory minimum set forth in 20 U.S.C. § 206.

**A. Whether Claims for Gap Time Are Cognizable Under the FLSA**

The FLSA explicitly mandates payment of minimum wage levels only for non-overtime hours and overtime pay rates only for work above the specified maximum hours.  29 U.S.C. §§ 201-219.  Therefore, it is not clear that an employee can state a claim under the FLSA for "gap time" if her average wage for non-overtime hours meets the statutory minimum.

Those courts to address the question agree that an employee cannot state a claim under the FLSA if her average wage, <u>for a period in which she worked no overtime</u>, exceeds the minimum wage. <u>United States v. Klinghoffer Bros. Realty Corp.</u>, 285 F.2d 487, 494 (2d Cir. 1961); <u>Blankenship v. Thurston Motor Lines, Inc.</u>, 415 F.2d 1193, 1998 (4th Cir. 1969); <u>Hensley v. MacMillan Bloedel Containers</u>, 786 F.2d 353, 357 (8th Cir. 1986).  This is because the premium overtime requirements of the FLSA do not apply until an employee has worked in excess of the statutory overtime requirement of 40 hours per week.

Here, however, plaintiffs are suing only for gap time in those weeks in which they worked overtime hours.  District courts

around the country have disagreed about whether this type of
claim is cognizable. The Second Circuit has not ruled on it and
the only circuit court decision to directly address it is <u>Monahan
v. County of Chesterfield</u>, 95 F.3d 1263, 1273 (4th Cir. 1996).
The Fourth Circuit's decision is consistent with the Department
of Labor's ("DOL's") interpretations, 29 C.F.R. §§ 778.315,
778.317 and 29 C.F.R. § 778.322, which support the view that gap
time claims are cognizable when the applicable employment
contract does not provide compensation for all non-overtime
hours.

### 1. Some District Courts Have Held that Gap Time Claims Are Not Cognizable, Even in Weeks of Over 40 Hours

Some district courts have held that gap time claims,
including those for gap time worked in weeks of over 40 hours,
are not cognizable under the FLSA as long as the employee has
been paid at or above the statutory minimum wage for all non-
overtime hours.  <u>See</u> <u>Braddock v. Madison County</u>, 34 F. Supp. 2d
1098, 1112 (S.D. Ind. 1998); <u>Davis v. City of Loganville, Ga.</u>,
2006 U.S. Dist. LEXIS 20795, at *22-23 (M.D.Ga. Mar. 27, 2006);
<u>Arnold v. City of Fayetteville, Ark.</u>, 910 F. Supp. 1385, 1394
(E.D. Ark. 1995).  Under this approach, it is irrelevant whether
the employment contract indicates that an employee's salary is
intended to compensate for all hours up to 40. Rather, as long as
the average wage for the first 40 hours of work per week is above
the minimum, a plaintiff cannot state a claim under the FLSA for
non-overtime compensation.  The rationale of these courts is that
the remedial purpose of the FLSA does not support its expansion
to a mechanism for employees to enforce a broad range of
employers' contractual obligations beyond the minimum wage and
overtime requirements enacted by Congress.  <u>Braddock</u>, 34 F. Supp.
2d at 1112.  Rather, such claims involve questions of contract
law more appropriately left to resolution in state courts.
<u>Arnold</u>, 910 F. Supp. at 1394.  Applying the rationale of these
district courts, plaintiffs here would have no claim for gap time
pay because it is undisputed that their average wage for the
first 40 hours of work per week is above the minimum.

## 2. **Department of Labor Interpretations**

The DOL has issued interpretations of its own FLSA regulations which suggest that gap time claims are cognizable for hours worked in overtime weeks if the employment contract makes clear that the employee is not being paid for all non-overtime hours. 29 C.F.R. §§ 778.315, 778.317, 778.322. While these interpretations are not binding, they do "constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944); see also Freeman v. NBC, 80 F.3d 78, 84 (2d Cir. 1996). DOL interpretation § 778.322 states:

> If an employee whose maximum hours standard is 40 hours was hired at a salary of $200 for a fixed workweek of 40 hours, his regular rate at the time of hiring was $5 per hour. If his workweek is later reduced to a fixed workweek of 35 hours while his salary remains the same, it is the fact that it now takes him only 35 hours to earn $200, so that he earns his salary at the average rate of $5.71 per hour. His regular rate thus becomes $5.71 per hour; it is no longer $5 an hour. Overtime pay is due under the Act only for hours worked in excess of 40, not 35, but if the understanding of the parties is that the salary of $200 now covers 35 hours of work and no more, the employee would be owed $5.71 per hour under his employment contract for each hour worked between 35 and 40. He would be owed not less than one and one-half times $5.71 ($8.57) per hour, under the statute, for each hour worked in excess of 40 in the workweek. In weeks in which no overtime is worked only the provisions of section 6 of the Act, requiring the payment of not less than the applicable minimum wage for each hour worked, apply so that the employee's right to receive $5.71 per hour is enforceable only under his contract. However, in overtime weeks the Administrator has the duty to insure the payment of at least one and one-half times the employee's regular rate of pay for hours worked in excess of 40 and this overtime compensation cannot be said to have been paid until all straight time compensation due the employee under the statute or his employment contract has been paid. Thus if the employee works 41 hours in a particular week, he is owed his salary for 35 hours -- $200, 5 hours' pay at $5.71 per hour for the 5 hours between 35 and 40 -- $28.55, and 1 hour's pay at $8.57 for the 1 hour in excess of 40 -- $8.57, for a total of $237.12 for the week.

29 C.F.R. § 778.322(emphasis added).

Related DOL interpretations, 29 C.F.R. §§ 778.315 and 778.317, also support the view that gap time claims are

cognizable when the applicable employment contract does not
provide compensation for all non-overtime hours.

### 3. Decisions by the Fourth and Tenth Circuits

Relying on these DOL interpretations, the Fourth Circuit
held in <u>Monahan</u> that gap time claims are not cognizable under the
FLSA where the express or implied terms of the applicable
employment contract provide compensation for all non-overtime
hours. <u>Monahan</u>, 95 F.3d at 1273.  In <u>Monahan</u>, a group of police
officers sued their employer, Chesterfield County, for back pay
compensation under the FLSA.  The officers alleged, among other
things, that they were owed compensation for hours worked in
excess of their regularly scheduled shifts, but below the
overtime threshold.  The officers were regularly scheduled to
work 135 hours per pay cycle, and were paid overtime compensation
for all hours in excess of 147.  The officers alleged that their
salary was meant to compensate them only for 135 hours, and that
they were therefore owed compensation for hours between 135 and
147.  The defendant argued that the officers' salaries
compensated them for all hours up to the 147 hour overtime
threshold.  Relying on the DOL interpretations, the Fourth
Circuit stated that, "to the extent that there can exist a
straight time claim under the FLSA, the court must first
determine the terms of the employment agreement.  If there is no
minimum wage or maximum hour violation, there is also no claim
under the FLSA for straight time gap pay if employees have been
properly compensated by salary for all nonovertime hours in
accordance with the employment terms to which they have either
expressly or impliedly agreed." <u>Id</u>. at 1272.

Applying this approach, the Fourth Circuit went on to decide
that the plaintiffs' salary was meant to compensate them for all
non-overtime hours.  <u>Id</u>. at 1279.  The Court reasoned that there
was a long standing practice between the parties of accepting
payment for non-overtime hours in biweekly paychecks and
additional payment at an overtime rate for all hours in excess of
147 per pay cycle.  Although this left a gap of several allegedly
unpaid hours between 135 and 147, the Court stated that the
parties' agreement on a particular annual salary, in combination
with express written policies stating that employees would be
paid overtime for all hours over 147, indicated that the
employees' salaries were meant to fully compensate them for all
hours up to 147.  <u>Id</u>. Therefore, the plaintiffs' claim for back
pay was denied.

The Tenth Circuit addressed a similar, but not identical,
claim in <u>Lamon v. City of Shawnee</u>, 972 F.2d 1145, 1150 (10th Cir.
1992)("Lamon II").  In <u>Lamon</u>, plaintiffs worked 8.5 hour shifts,

but were not compensated for thirty minutes of meal time unless they were actually called to duty during their meal break.  Id. at 1148.  DOL regulations require employers to pay compensation for meal times unless the employee is "completely relieved from duty." 29 C.F.R. § 553.223.  Because a jury found that plaintiffs were not completely relieved of their duties during meal times, plaintiffs were owed compensation for their meal time under the FLSA.  Lamon II, 972 F.2d 1155-57.  The meal time at issue fell in the "gap" and therefore the Court determined the rate of compensation for such time.  In determining the amount of back pay owed to the plaintiffs, the District Court rejected the defendants' argument that it could be paid at the minimum wage, stating that it found that argument "to be unreasonable in view of the remedial purpose of the FLSA." Lamon v. City of Shawnee, Kan., 754 F. Supp. 1518, 1521 n.1 (D. Kan. 1991)("Lamon I"). Rather, the court found "the requirement that plaintiffs be paid compensation at their regular hourly rate to be implicit in the framework of the FLSA."  Id.  Affirming the district court on appeal, the Tenth Circuit stated that "compensation for meal periods at a rate less than a regular rate would be contrary to the FLSA."  Id. at 1155.

Based on 29 C.F.R. § 778.322 and the rationale of the Fourth Circuit in Monahan, I conclude that claims for gap time are not cognizable under the FLSA when the express or implied terms of the employment contract provide compensation for all non-overtime hours.  This holding is also consistent with the rationale of Lamon, because in that case, the Tenth Circuit determined that plaintiffs should be paid at the regular rate for gap time because their employment contract did not provide compensation for that time, and because they were not completely relieved from duty during that time.

**B. Plaintiffs Are Not Owed Gap Time Compensation**

In order to determine whether plaintiffs are owed compensation for gap time in this case, the first step under 29 C.F.R. § 778.322 is to determine whether plaintiffs' employment contract compensates them for all non-overtime hours.  The CBA between the parties provides a salary for the first 37.5 hours of work per week.  Plaintiffs work 40 regularly scheduled hours every other week.  Most employees receive a half hour meal break during each shift, so that they are relieved from duty for 2.5 hours during each 40 hour week. However, it is undisputed that plaintiffs working in the field do not receive a meal break.

For those plaintiffs who do not receive a "dedicated duty-free meal period during the tour of duty," the CBA provides "additional annual compensation."  The additional compensation is equivalent to one hour of pay per week.  The CBA provides that

this compensation "shall be paid in the same manner as assignment differentials."

The CBA provides that the additional compensation must be paid to those who are not given a duty free meal break. Although the CBA does not explicitly state that the additional pay is meant to compensate plaintiffs for the 2.5 hours per week that they would otherwise be off-duty for meal breaks, there is no other logical reading of the contract. I therefore conclude that the CBA is unambiguous and that field plaintiffs are provided compensation for all non-overtime hours. Because their employment contract provides compensation for all non-overtime hours, plaintiffs cannot state a claim for gap time.

## IV. Uncompensated Pre and Post Shift Activities

Plaintiffs claim that they consistently engage in 15 to 30 minutes of uncompensated overtime prior to the official start time of their shifts. Plaintiffs allege that they must check in with a lieutenant, change into uniform and gather and inspect personal equipment before the start of their shifts. In opposition, defendants do not dispute that the activities at issue took place nor do they dispute that they were generally aware of them. However, defendants do dispute that these activities regularly took place off the clock, as opposed to during regularly scheduled hours.

Twenty plaintiffs have been deposed. The deposition testimony of these plaintiffs regarding each alleged pre-shift task varies. Some plaintiffs testified that an individual task takes only a minute or two to complete and some report that an individual task takes 15 minutes. In addition, some plaintiffs testified that they perform all of the tasks on a daily basis while others testified that they perform tasks prior to their shift only once a month or never at all.

Therefore, whether and how often each of these activities took place off the clock is a disputed issue of material fact precluding summary judgment. In addition, given the small percentage of plaintiffs deposed and the significant differences in their testimony, it is not clear whether plaintiffs are sufficiently similarly situated for this claim to be properly adjudicated in an FLSA collective action.

## V. Late payment of Overtime Wages

Plaintiffs move for summary judgment that the manner in which defendants pay them overtime violates the prompt payment requirement of the FLSA. Although the FLSA does not explicitly require that wages be paid on time, courts, including the Second Circuit, have long interpreted the statute to include a prompt payment requirement. <u>Rogers v. City of Troy</u>, 148 F.3d 52, 55 (2d Cir. 1998) (citing <u>United States v. Klinghoffer Bros. Realty Corp.</u>, 285 F.2d 487, 491 (2d Cir. 1960)). In addition,

"[b]ecause the statute does not explicitly address the prompt payment requirement . . . [i]t is, therefore, appropriate to consider the views of the administrative agency charged with the law's enforcement." <u>City of Troy</u>, 148 F.3d at 57 (citing <u>Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.</u>, 467 U.S. 837, 842-45 (1984)).  The relevant DOL interpretation provides that:

> There is no requirement in the Act that overtime compensation be paid weekly. The general rule is that overtime compensation earned in a particular workweek must be paid on the regular pay day for the period in which such workweek ends. When the correct amount of overtime compensation cannot be determined until some time after the regular pay period, however, <u>the requirements of the Act will be satisfied if the employer pays the excess overtime compensation as soon after the regular pay period as is practicable</u>. Payment may not be delayed for a period longer than is reasonably necessary for the employer to compute and arrange for payment of the amount due and in no event may payment be delayed beyond the next payday after such computation can be made.

29 C.F.R. § 778.106 (emphasis added).

Accordingly, an inquiry into an employer's liability for late payment of overtime focuses not only on how often late payments were made or how late they were, but also on whether the payments were made as soon as practicable.  The Second Circuit has stated that "what constitutes timely payment must be determined by objective standards -- and not solely by reference to the parties' contractual arrangements." <u>City of Troy</u>, 148 F.3d at 57.  Applying these objective standards in <u>Klinghoffer Brothers Realty</u>, the Second Circuit held that the FLSA was violated when an employer agreed to pay its employees overtime compensation only when the company emerged from bankruptcy proceedings. <u>Klinghoffer Bros. Realty Corp.</u>, 285 F.2d at 489-90. Because the employees only had "a vague understanding that at some indefinite future date . . . they would be taken care of," the Second Circuit concluded that "such delayed payment does not meet the requirements" of the FLSA. <u>Id</u>. at 491.

In this case, the parties agree that between January 1, 2002 and August 19, 2006, approximately $50,000 worth of overtime was paid to test plaintiffs more than two pay periods after the date on which it was worked.  This $50,000 corresponds to 431 overtime payments, or approximately 1% of the 44,998 total overtime payments made to test plaintiffs during this time.  The parties do not dispute the facts regarding what steps are taken by defendants to process time sheets and send out pay checks.

However, the parties dispute why the payments were late and whether they could have been made sooner.  Plaintiffs blame the delay on defendants' "archaic" payroll system, pointing to errors made when the sign-in sheets are transcribed by hand, problems scanning the time sheets, and other such issues.  In contrast, according to defendants, any errors that occur are caused by uncontrollable factors, including the failure of plaintiffs to correctly record their overtime.

Therefore, a genuine issue of material fact exists as to why overtime payments were late.

## VI.  Cumulative Offset of Plaintiffs' Potential Damages

Defendants move for summary judgment that any damages that could be assessed against them for the violations of the FLSA are offset by overpayments they have already made to plaintiffs, with the exception of approximately $61,000 of potential damages. Pursuant to the FLSA, an employer may credit some payments it has already made to employees against the overtime it owes them. Specifically, there are three categories of payments which may be credited against overtime compensation mandated by the FLSA. 29 U.S.C. § 207(h)(2).  First, employers receive credit for "extra compensation provided by a premium rate" for hours worked "in excess" of an employee's regular working hours. Id. § 207(e)(5). Second, employers receive credit for "extra compensation provided by a premium rate" of one and one-half times the regular rate paid for non-overtime work performed on weekends, holidays, and other days of rest.  Id. § 207(e)(6).  Third, employers receive credit for "extra compensation provided by a premium rate" of one and one-half times the rate paid for non-overtime work performed outside the regular workday or workweek.  Id. § 207(e)(7).

Defendants pay plaintiffs three types of "extra compensation."  First, every other week, plaintiffs are scheduled for only four shifts of eight hours.  In those weeks, the defendants pay plaintiffs time and a half for any additional time that plaintiffs work over their regularly scheduled 32 hours. Time and a half for hours between 32 and 40 is extra compensation which may be credited against required overtime compensation.  In addition, if a plaintiff works "late call" beyond an eight hour shift, time and a half is paid for those hours regardless of whether the 40 hour threshold is met that week. In weeks of less than 40 hours, late call pay is extra compensation.  Third, defendants argue that plaintiffs are paid a premium for overtime beyond the amount required by the FLSA, because they calculate plaintiffs' regular rate by dividing plaintiffs' salaries, plus meal money and shift differentials, by 1957.5 hours, equivalent to 37.5 hours per week for one year, instead of 2088, which would be equivalent to 40 hours per week for one year.  This inflates plaintiffs' regular rate and, therefore, their overtime rate.

Defendants argue that if all extra compensation paid to plaintiffs over the applicable damages period is added up and offset against all potential damages, only 21 test plaintiffs are owed unpaid wages, totaling approximately $61,687.

## A. Offsets May Not Be Applied Cumulatively

Defendants' claim regarding offsets raises a threshold legal issue of how offsets may be applied.  As plaintiffs point out, there is authority for the proposition that in order to offset any liability for unpaid overtime hours, overpayments must be made within the same workweek as the deficiency.  In contrast, Defendants argue that all premium payments during the applicable damages period should be offset against all liability during that time.

The FLSA itself is silent on the time period within which offsets may be applied, and the DOL has not issued a regulation specifically addressing it. The DOL has, however, issued an interpretation and an opinion letter which bear on the question. In addition, although the Second Circuit has not addressed the issue of cumulative offsets, the Fifth, Sixth and Seventh Circuits have written extensive opinions on it.

### 1. DOL Interpretation and Opinion Letter

The DOL has issued an interpretation that describes which types of increased hourly pay qualify under 29 U.S.C. § 207(h)(2) as extra pay which may be offset against overtime liability. See 29 C.F.R. § 778.202.  This interpretation provides, among other things, that an employer may credit increased rates paid for hours worked in excess of eight per day "against the overtime compensation which is due under the statute for hours in excess of 40 in that workweek."  Id. § 778.202(c)(emphasis added).  The language "in that workweek" suggests that the extra payments may only be used to offset liabilities accruing in the same workweek. The DOL has also issued an opinion letter, which states that credits "may not be carried forward or applied retroactively to satisfy an employer's overtime pay obligation."  Letter from Herbert J. Cohen, Deputy Administrator, U.S. Dep't of Labor, WH-526, 1985 WL 304329 (Dec. 23, 1985).

### 2. Circuit Court Decisions On Cumulative Offsets

The circuit courts to address the issue of whether offsets may be applied cumulatively have split on it.  One line of cases supports plaintiffs' interpretation that premium credits allowed by § 207(h)(2) should be limited to the same workweek or work period in which these premiums were paid. Herman v. Fabri-Centers of Am., 308 F.3d 580, 590 (6th Cir. 2002); Howard v. City of Springfield, Ill., 274 F.3d 1141, 1149 (7th Cir. 2001).

Another line of cases supports defendants' interpretation that offsets may be applied cumulatively. See Singer v. City of Waco, 324 F.3d 813 (5th Cir. 2003);  Alexander v. United States,

32 F.3d 1571, 1577 (Fed. Cir. 1994); <u>Kohlheim v. Glynn County, Ga.</u>, 915 F.2d 1473, 1481 (11th Cir. 1990).  There is no authority from the Second Circuit on this issue.

### a. The Fifth Circuit Has Held that Offsets May be Applied Cumulatively

In Singer v. City of Waco, the Fifth Circuit rejected the notion that allowing cumulative offsets permits the payment of overtime after it is due.  The court reasoned that cumulative offsets merely acknowledged the fact that defendant had already paid the bulk of its overtime obligations.  Singer, 324 F.3d at 828.  Although plaintiffs in Singer suffered underpayments in 120 hour pay periods, they received overpayments in 96 hour pay periods.  Id. at 826.  The Fifth Circuit held the overpayments from the 96 hour pay periods cumulatively offset any deficiencies in the 120 hour periods.  Id. at 828.  The Court explained that "we need not view the overpayments made by the City during the 96-hour work periods as 'late' payments of overtime compensation. It seems more appropriate to view those overpayments as pre-payments: the City pre-paid the fire fighters to compensate them for the shortfalls they would receive in subsequent 120-hour work periods.  Although § 778.106 states that overtime compensation 'generally' should be paid in the same work period in which the work is performed, the provision does not prohibit an employer from paying overtime compensation in advance."  Id.

### b. The Sixth and Seventh Circuits Have Held that Offsets May Only Be Applied to Liabilities Accruing Within the Same Work Period

In contrast to the approach of the Fifth Circuit, the Sixth and Seventh Circuits have concluded that extra payments allowed by § 207(h)(2) may only be applied to liabilities accruing within the same workweek in which they are paid. Herman, 308 F.3d at 590; Howard, 274 F.3d at 1149.  These circuits reasoned that the protections of the FLSA would be significantly undermined if an employer were allowed to pay its overtime obligations at a time far removed from when that amount was due.  Howard, 274 F.3d at 1148.  In such a case, an employer could unfairly require an employee to work long overtime hours without FLSA mandated overtime payment in one year in which the economy was depressed. Id. at 1149.  Then, in the next year in which economic conditions are improved, the employer could pay premiums to the employee, and then use those premiums to offset the overtime liability from previous years.  Id. at 1149.  In addition, the Seventh Circuit reasoned that allowing cumulative offsets "is inconsistent with the statutory requirement that overtime payments must be timely made."  Id. at 1148.

I conclude that that is appropriate to adhere to the DOL's interpretations on this issue, which are entitled to deference.

<u>Llanos-Fernandez v. Mukasey</u>, 535 F.3d 79, 82 (2d Cir. 2008).  DOL interpretation 29 C.F.R. § 778.202(c) and the DOL's 1985 opinion letter both support the conclusion that an employer may only credit extra payments against overtime liability accruing in the same workweek.  <u>See</u> 29 C.F.R. § 778.202(c); <u>see also</u> <u>Scott v. City of New York</u>, 592 F. Supp. 2d 475, 482 (S.D.N.Y. 2008)(stating that 29 C.F.R. § 778.202 "resolves the ambiguity" in § 207(h)(2) and makes clear that premium credits may only be credited against liability in the same work period).  In addition, the protections of the FLSA would be undermined if an employer were allowed to pay its overtime obligations at a time far removed from when that amount was due.  <u>Howard</u>, 274 F.3d at 1148.  Accordingly, FLSA credit may be applied to offset overtime liability only within the work period in which it accrued.

**VII. Defendants Have Not Shown that All Potential Damages Are Offset By Overpayments Made in the Same Work Period**

In this case, defendants assert in their 56.1 statement that they have calculated the total amount of damages they would owe if found liable for all of plaintiffs' claims and compared this number with the amount of premium credits they previously paid over the entire damages period.  However, in light of my ruling that offsets may only be applied on a pay period basis, these calculations are inapplicable.  Moreover, defendants have provided no evidence supporting or explaining their calculations and it is unclear how they arrived at their numbers.  Therefore, a genuine issue of material fact exists as to whether overpayments made within the same work period as the alleged violations are sufficient to offset defendants' liability for those violations.

## CONCLUSION

For the reasons set forth above, plaintiffs' motion for summary judgment is denied.  Defendants' motion for summary judgment is granted in part and denied in part.  SO ORDERED.

Date:     New York, New York
          October 23, 2009


S/_____
      MIRIAM GOLDMAN CEDARBAUM
      United States District Judge